CROSBY MILLING COMPANY, INC. v. E. M. GRANT, Trustsee, et al.

Eastern Section.   December 3, 1927.

Petition for Certiorari denied by Supreme Court, March 31, 1928.

W. N. Hickey, of Morristown, for complainant.

Taylor & Bell, and A. T. Drinnon, of Morristown, Donaldson & Montgomery, of Knoxville, and J. Frank Park, of Jefferson City, for defendant.

PORTRUM, J.  The bill in this case was filed to tide over a failing corporation to such time as it was able to again get upon its feet, or, in the event this was not possible, that it be wound up as an insolvent institution, by a distribution of its assets among its creditors.  The corporation had its situs at Talbott, Tennessee, which is a station on the Southern Railway in Jefferson county, and its real estate, which was heavily mortgaged to secure its creditors, was located in Jefferson county.  The bill, to wind up the corporation, was filed in Hamblen county, and a creditor, the Mossy Creek Bank, of Jefferson City, Jefferson county, Tennessee, filed a plea in abatement, challenging the jurisdiction of the chancery court of Hamblen county to pass upon the matters involved, for the reason that the situs of the corporation, or its principal offices, were not located in Hamblen county, nor was its real estate in Hamblen county, and therefore the venue lay in Jefferson county, where the offices and property were.  The Chancellor overruled the plea, and the bill was sustained as a general creditor's bill, an account ordered, and a decree of sale entered and made, when the same was confirmed, and the Mossy Creek Bank prayed a discretionary appeal to the Supreme Court, which was granted at that stage of the proceedings.

The case was carried to the Supreme Court at Knoxville, September Term, 1926, when a decree was entered reversing the judgment of the Chancellor and sustaining the plea in abatement, with a remand, for the purposes as stated in the order of the Supreme Court, to-wit:

"This cause was heard upon the transcript of the record, assignments of error, brief and argument of counsel, and it appearing that the bill was filed in Hamblen county by complainant, whose corporate situs and real estate lay wholly in Jefferson county, and defendant, the Mossy Creek Bank, a resident of Jefferson county, by plea in abatement, invoking the provisions of chapter 107, Acts 1877, challenged the local jurisdiction of the chancery court in Hamblen county, which said plea, its truth being admitted by complainant, was, by the Chancellor, held insufficient.  Thereupon, after consideration, the court is of the opinion that the plea in abatement should have been sustained and complainant's bill dismissed.  It is, therefore, adjudged and decreed by the court that the decree of the Chancellor be reversed, but having proceeded in the chancery court to the appointment of a receiver, and a partial administration of the personal assets, and a sale of the real estate, the cause is remanded to the chancery court of Hamblen county for orders.  First, looking to the proper accounting by the receiver; second, order setting aside the same to E. M. Shelley, and restoring to him the cash payment and notes given for the real estate; third, and for the adjudication of the costs of the lower court.  The costs of the appeal are adjudged against the complainant and R. M. Hickey and J. Hall-

man Bell, sureties on the cost bond, for which execution may issue, unless there are funds in court belonging to complainant sufficient to pay such costs, in which event the costs of the appeal will be paid out of said funds."

The case was remanded under this order and confusion has arisen over the interpretation of the above decree. When the case was first remanded the Chancellor entered an order of reference to ascertain, among other things, the fair compensation of the receiver, but expressly providing in the order "the adjudication of all questions are reserved." So, when the order came up for confirmation, the Chancellor was of the opinion that he had no authority in the premises to fix and determine the receiver's compensation, decreeing, "the court is of the opinion that as the Supreme Court has held that this court did not obtain jurisdiction of the original cause, it is now without jurisdiction to pass upon and decree upon any other matter, or matters, involved in this litigation, such as the receiver's compensation. The court is further of the opinion that the receiver's compensation is not 'costs of the appeal, or costs of the original cause,' as referred to in the opinion and decree of the Supreme Court, and that the cost referred to in the opinion and decree of the Supreme Court covers and included only statutory costs, or ordinary costs incident to litigations of this kind . . ."

The court, in taxing the costs, decreed as follows:

"The court is of the opinion and doth decree that the actual court costs, and the costs of the appeal to the Supreme Court in this cause, should be, and are, taxed against the complainant, the Crosby Milling Company, and the sureties on its cost bond, R. M. Hickey (now Mrs. Burke Peebles Hickey, Executrix) and J. Hallman Bell, except the costs incident to the filing of the various petitions in this cause, which are taxed against the petitioning creditors and the sureties on their respective cost bonds."

"The court is further of the opinion and doth adjudge and decree that the assets of the Crosby Milling Company became a trust fund for the benefit of creditors from the passing of a resolution by the stockholders, directing that this general creditors' bill shall be filed, and that said funds are not liable for the costs of the cause, or the costs of the appeal to the Supreme Court in this cause."

The court found as a fact that there was in the hands of J. S. Smith, receiver, the sum of $1511.05 not covered by any lien claim of any person except the claim of general creditors, but that the receiver had paid $300 of this fund by order of court to the solicitors interested in the cause, and at the time of the report he had in his hands in actual cash $1211.05.

The receiver has appealed and complains because the Chancellor did not fix his compensation and decree it as costs in the cause, or,

at any rate, adjudge it against the party responsible for his appointment.

Mrs. Burke Peebles Hickey, executrix of R. M. Hickey, deceased, and J. Hallman Bell have appealed and assigned error, first, because the Chancellor taxed the costs of the lower court against them as sureties on the prosecution bond; second, because the Chancellor taxed them, as sureties on the appeal bond, with the costs of the appeal, when, as they interpret the decree of the Supreme Court, it was adjudged that the appeal costs should be paid out of funds belonging to the Crosby Milling Company, in the hands of the receiver.

These are the three questions to be decided upon this appeal. As to the first, this court is of the opinion that the Chancellor was in error in his conclusion that he was without jurisdiction to fix and adjudge the receiver's compensation.

The venue of a suit to wind up an insolvent corporation turns upon whether or not the action is transitory or local. If the action is transitory, then the jurisdiction of the parties can be waived, the right to question the venue being a personal privilege or exemption. And this class of cases, when this privilege or exemption is relied upon by plea in abatement, the court has power to fix the compensation of receivers and tax the costs, without reference to Shannon's Code, section 4957, which provides:

"Where a suit is dismissed from any court for want of jurisdiction, or because it has not been regularly transferred, from an inferior to a superior court, the costs shall be adjudged against the party attempting to institute or bring up the cause."

This statute was intended for cases where the court had no jurisdiction and jurisdiction could not be conferred by consent, and does not apply to transitory action. For an exhaustive discussion of this question see Brown v. Brown, 155 Tenn., 530, 296 S. W., 356, published Advance Sheets, September 7, 1927.

A creditor of a corporation may have filed a bill to wind up the corporation if it had committed an act of insolvency at the place where its general offices were, and the general offices might be in any county; a corporation may also be sued by service upon its president, and other officers named in the statute, where found. See Shannon's Code, sections 2071, 4516, 5181. A corporation may own land in one or more counties, which would be sold under an order administering the corporations assets in a creditors' bill, the location of the land does not control, making the jurisdiction of the court local, for the reason that the suits may be instituted, as provided by the above statutes at the place where the officer or officers are found. This being true, the rule, as found in Brown v. Brown, supra, controls, and the Chancellor, as in that case, had jurisdiction to fix the compensation of the receiver.

We are of the opinion, from all the facts, that the sum of $500, as fixed, is sufficient, and this amount is declared to be his compensation. Whether this sum should be taxed as costs of the cause, or adjudged against the Crosby Milling Company, is a question of some difficulty. We are inclined to think that it is not technically a part of the costs of the cause in a case where the court has no jurisdiction, in the face of a plea in abatement, to appoint a receiver; then the receiver's action for compensation is an independent action, growing out of the wrongful act of the complainant in procuring his appointment. If this is true, his claim then is a claim on the footing of all other general creditors. It is not necessary to decide this, for the reason there is no assignment of error that the Chancellor erred in holding that the receiver's compensation was not the ordinary cost chargeable against the sureties on the cost bond.

This brings us to the action of the lower court in taxing the costs of the chancery court against the company, and the sureties on its prosecution bond. There was nothing in the decree of the Supreme Court restricting the discretion of the Chancellor in taxing this cost. The Chancellor does not state his reasons for taxing the costs against the complainant, and its sureties, and, in the absence of a showing that the Chancellor abused his discretion, this court cannot review his action.

The amount involved is not large, being $85, plus the commission due the Clerk and Master in selling the property, which is, in the absence of an order allowing more, $100, and allowing only this sum out of the $380 charged, reduces the cost bill to $185. It may be that the Chancellor thought it just that the sureties on the prosecution bond should pay this sum because of the lack of care in bringing this bill in the wrong county, and incurring costs, to the detriment of the general creditors.

As for the Supreme Court costs, which amount to $69.10, we are inclined to interpret the decree of the Supreme Court to mean that this sum is to be paid out of the funds in the hands of the receiver, not subject to the satisfaction of creditor's liens, and the Chancellor was in error in holding that, since the resolution of the stockholders, the general funds were impressed with a lien and not subject to the satisfaction of the appeal costs. The Supreme Court knew the corporation was insolvent, and the assets were insufficient to pay the creditors in full. It was therefore cognizant of the general creditor's lien. So, when it ordered that if there were any funds belonging to the corporation, such funds should be used in satisfaction of the costs, it intended to apply this fund, which is free from lien debts, first before paying general creditors.

The decree of the lower court, as above modified, is affirmed, and the costs of this appeal will be paid out of the funds in the hands of the receiver.

Snodgrass and Thompson, JJ., concur.